**CARTEE, LC**
Anthony B. Cartee (SBN 248721)
333 City Boulevard West, 17th Floor
Orange, CA 92868
Telephone: (714) 938-3887
Facsimile: (714) 938-3255
Email: acartee@ac-legal.com

Attorneys for plaintiff:
LANABOND LIMITED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

CV13-02279 FMO (SHx)

| | |
|---|---|
| LANABOND LIMITED, a Cyprus corporation, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT** |
| v. | **JURY TRIAL DEMANDED** |
| GRADING DIMENSION PICTURES, INC., a California corporation and | |
| DOES 1 – 10, inclusive, | |
| Defendants. | |

## PARTIES

1.    Plaintiff Lanabond Limited is a company incorporated under the laws of Cyprus, with its registered office at Kennedy, 8, 1st Floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus.

2.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Grading Dimension Pictures, Inc. ("Defendant") is currently a suspended company incorporated in the State of California, with its office located at 10940 Wilshire Blvd Suite 1200, Los Angeles, CA 90024.

- 1 -
COMPLAINT

3.      Plaintiff is informed and believes, and based thereon alleges, that the defendants named herein as Does 1 through 10, inclusive, are and at all relevant times have been legally responsible in some manner for the events and happenings alleged in this complaint. The true names or capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as Does 1 through 10, inclusive, are presently unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to show their true names and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

4.      This Court holds diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different foreign states and the amount in controversy exceeds $75,000.

5.      This Court enjoys venue pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in the Central District of California.

## BREACH OF CONTRACT

### (Against Defendant and DOES 1 through 10 inclusive)

6.      Plaintiff is an investment company engaged in securities and film production.

7.      Defendant is a production house specializing in the colorization of black-and-white films, particularly Soviet-made films.

8.      On or around November 21, 2010, Plaintiff and Defendant entered into a contract ("Contract"), by which they agreed to the following essential terms:

      a.      Plaintiff would pay Defendant $500,000.00 and Defendant would make a colorized version of an originally black-and-white 1936 Soviet movie entitled "Tsirk" or "Circus," directed by G. Aleksandrov (the "Movie").

b.      The colorization was to be completed by June 3, 2011.

c.      Plaintiff and Defendant would establish a joint venture ("JV"), which would hold the intellectual property rights in the colorized Movie.  Until the establishment of the JV, the intellectual property rights in the Movie would be held by Defendant.

d.      Following establishment of the JV, Defendant would then distribute the Movie.  Defendant would undertake to distribute the Movie by way of sale of screening rights for an amount of no less than $540,000.00.

e.      In case of Defendant's failure to perform colorization or distribution of the Movie within the contractual terms, Defendant would pay 12% per annum of the total value of the Contract.

f.      Profits of the Movie's distribution were to be shared by repaying Plaintiff's $500,000.00 investment, prior to any other payments, then deducting $30,000 from Defendant's profits in favor of JV for JV's operation costs, and dividing the remaining profits equally between Plaintiff and Defendant.

9.      The Contract is governed by the laws of the State of California.  Any disputes arising from or in connection with the Contract are to be referred to the London Court of International Arbitration.

10.      Plaintiff has performed all its obligations under the Contract; however, Defendant has only partially fulfilled its obligations and has breached the Contract in a number of material respects.

11.      Defendant produced a colorized version of the Movie pursuant to the contract and arranged for the sale of screening rights to Channel One under a Licensing Agreement entered in or around June 2011.  However, this sale was for a sum equivalent to $412,000.00, or less than the minimum permissible amount of $470,000.00.

COMPLAINT

12.    The same is true with respect to DVD release rights which were granted to Novyy Disk (a Russian distributor) for the amount of $8,000.00, lower than the $15,000.00 minimum established in the Contract's Schedules.

13.    Moreover, neither of the above amounts obtained by Defendant was made available for repayment of the Plaintiff's investment as it was required to have been pursuant to the Contract.  Upon information and belief, Defendant has not carried out any further sales of the rights to the Movie.

14.    Defendant has also failed to:

a.    Procure that conditions of the Licensing Agreement concluded with Channel One were no worse than the minimum stated amount in Schedule 1;

b.    Arrange for sale of screening rights of the Movie to any of the major Ukrainian channels as per Schedule 1;

c.    Sell the DVD release rights regarding the Movie at conditions no worse than those stated in Schedule 1; and

e.    Ensure the repayment of Plaintiff's investment pursuant to the Contract, even though Defendant received monies from its licensing deals.

15.    In an attempt to resolve their controversies, the parties signed a memorandum on or about May 21, 2012, which provided, among other things, for repayment of Plaintiff's investment no later than September 21, 2012.

16.    Despite this attempt at resolution, Plaintiff has not received any payments from Defendant, and has been damaged in an amount of no less than $515,000.00, plus interest, and attorneys' fees.

17.    Pursuant to the Contract, Plaintiff initiated arbitration ("Arbitration") against Defendant on or about March 22, 2012, before the London Court of International Arbitration.  Attached as Exhibit "A" is a copy of the Request for Arbitration and all documents attached thereto, including the Contract and Schedules at issue.

18.     This complaint herein is brought solely for the purposes of initiating a court action so Plaintiff may seek interim and provisional remedies while the Arbitration is pending. Pursuant to The Federal Arbitration Act, 9 U.S.C. § 3 *et seq.*, Plaintiff does not waive any right prosecute the Arbitration by bringing this action, and does not waive any rights or claims against any parties by virtue of the filing of this complaint. Plaintiff has only pleaded its breach of contract claim and does not waive its right to prosecute any and all claims in the Arbitration. At the appropriate time, this Court should stay this action in favor of the Arbitration.

WHEREFORE, without waiving its statement above in that this action is solely brought to seek available interim measures while the arbitration is pending, as a matter of course, Plaintiff respectfully prays for judgment as follows:

1.     For compensatory damages against Defendant in an amount no less than $515,000.00;

2.     For pre-judgment and post-judgment interest as provided by law;

3.     For fees and costs as allowed by law, including, without limitation, attorney's fees; and

4.     For such and other and further relief as this Court deems just and proper.

Dated: March 29, 2013

**CARTEE, LC**

By: _____

Anthony Cartee, Esq.
Attorneys for Lanabond Limited

## DEMAND FOR JURY TRIAL

Without waiving its statement above in that this action is brought solely to seek possible interim measures while it proceeds in Arbitration, as a matter of course, pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: March 29, 2013

**CARTEE, LC**

By: _____

Anthony Cartee, Esq.
Attorneys for Lanabond Limited

- 6 -
COMPLAINT

**EXHIBIT A**

**IN THE MATTER OF ARBITRATION UNDER LCIA ARBITRATION RULES**

**ARBITRATION NO. …**

**B E T W E E N:**

**LANABOND LIMITED**

<u>Claimant</u>

**-and-**

**GRANDING DIMENSION PICTURES Inc.**

<u>Respondent</u>

_____

**REQUEST FOR ARBITRATION**

_____

22 March 2013

## I.  THE PARTIES

1. The Claimant, Lanabond Limited, submits this Request for Arbitration ("**the Request**"). Lanabond Limited ("**Claimant**" or "**Lanabond**") is a company incorporated under the laws of Cyprus, with its registered office at: Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus. The company is engaged in the investment activity in the spheres of securities and film production.

2. The Respondent in this arbitration is Grading Dimension Pictures Inc. ("**GDP**" or "**Respondent**") is a company, incorporated in the State of California, USA. GDP is a production house specialised in colourisation of old (primarily Soviet-made) films.

## II.  CLAIMANT'S REPRESENTATIVES

3. Claimant is represented in this arbitration by Andrew Astapov (Managing Partner), Oleh Beketov (Partner) and Ivan Lishchyna (Senior Associate) of Astapov Lawyers International Law Group whose contact details are:

> **Astapov Lawyers International Law Group**
> 4 Muzeyny prov., 3rd floor, Kyiv, 01001, Ukraine
> Phone: +38 (044) 490 7001
> Fax: +38 (044) 490 7002
> e-mails:
> *astapov@astapovlawyers.com*
> *beketov@astapovlawyers.com*
> *lishchyna@astapovlawyers.com*

4. The Claimant requests that all correspondence concerning these proceedings is sent to all of Andrew Astapov, Oleh Beketov and Ivan Lishchyna at Astapov Lawyers International Law Group.

## III.  RESPONDENT'S CONTACT DETAILS

5. According to various documents produced by the parties to these proceedings the

2

Respondents place of business is:

10940 Wilshire Blvd. Ste. 1200,

Los Angeles, California, 90024.

In all the negotiations regarding the subject-matter of the present dispute GDP was represented by its majority shareholder, Mr Igor Lopatonok, whose email is *igor.lopatonok@gmail.com.*

## IV.  THE ARBITRATION AGREEMENT

6.  The arbitration agreement between the parties was made in writing. It is contained in Clause 8 of Contract No. H-108/21, dated 21 November 2010 between the Claimant and the Respondent[1] ("**Contract**"), which provides for arbitration in London under the rules of the London Court of International Arbitration ("**LCIA Rules**").

7.  Clause 8 provides as follows:

> *8.1. The Parties shall endeavour to resolve all disputes that may arise from or in connection with this Contract by negotiations.*
>
> *8.2. If the Parties fail to resolve a dispute by negotiations, then any such dispute arisen from or in connection with this Contract, including any matters in connection with its existence, validity or termination, shall be referred to, and finally resolved by, arbitration according to the Rules of the London Court of International Arbitration, which rules shall be deemed to be incorporated herein by reference.*
>
> *8.3. The Parties have agreed that this contract shall be governed by law of the State of California, USA.*

8.  This Request is made pursuant to Clause 8.2 of the Contract and Article 1 of the LCIA Rules.

9.  The dispute concerns the Respondent's breach of the Contract by way of failing to

(a) pay the Claimant an amount of proceeds received by the Respondent from distribution of a colourised version of an originally black-and-white Soviet movie "Цирк" ("Tsirk" or

---

[1] See copy of the Contract along with its translation into English attached as **Exhibit 1** to this Request.

3

"Circus", directed by G. Aleksandrov in 1936 at Mosfilm Studio, hereafter "**Movie**"), produced by GDP on the basis of the Claimant's investment and

(b) to repay the total amount of the Claimant's investment within the period of time specified in the Contract.

## V.  AGREEMENT

10. On 21 November 2010 the Claimant and Respondent concluded the Contract, which provided as follows:

- Lanabond undertook to pay to GDP a price of Movie colourisation in the amount of USD 500,000 on or before 10 December 2010 (cl. 4.1);

- GDP was to perform colourisation of the Movie on or before 3 June 2011 (cl. 3.1);

- the parties were to establish in Cyprus a 50/50 joint venture ("**JV**"), which would hold the intellectual property rights in the colorised Movie (cl. 2.5 and 2.6);

- until the establishment of the JV, the intellectual property rights in the Movie would be held by the Respondent (cl. 2.2);

- following the transfer of the rights in the Movie to JV, the latter would enter into an agreement with the Respondent for the exclusive distribution of the Movie (cl. 2.7);

- GDP undertook to distribute the Movie (cl. 2.3) by way of selling of screening rights for the amount of no less than USD 540,000 on the terms provided for in Schedule 1 (cl. 3.2);

- in case of GDP's failure to perform colourisation or distribution of the Movie within the contractual terms, Respondent was to pay liquidated damages of 12 per cent per annum of the total value of the Contract;

- the profits from the distribution of the Movie, after the recoupment of the distribution costs, were to be shared as follows (cl. 4.4):

  i.  the Respondent was to be repaid the sum of its investment (USD 500,000) from the profits of distribution of the Movie prior to any other payments;

4

ii.   USD 30,000 would be deducted from the Respondent's share of the profits in favour of JV;

iii.  the profits remained after the repayment of the Respondent's investment were to be divided 50/50 by the Parties.

11. On the same day the parties signed two Schedules to the Contract, of which Schedule 1 ("**Schedule 1**") is of relevance to the present dispute. Under Schedule 1[2] GDP undertook to arrange before 15 May 2011 a sale of the Movie demonstration rights to:

- the Russian Channel One ("**Channel One**" the most prosperous of Russian TV channels) for the amount equivalent to USD 470,000;

- one of the Ukrainian principal channels for the amount equivalent to USD 55,000.

GDP also undertook to sell the DVD release rights for former USSR countries with a minimum guarantee equal to USD 15,000, and 30% royalty payable on settlement of such minimum guarantee.

12. Later on, in early December 2010, the parties concluded Addendum to the Contract, amending cl. 4.4 to state that USD 500,000 and USD 30,000 should be repaid to the Applicant and JV respectively by 10 June 2011[3].

## VI. RESPONDENT'S BREACHES OF THE CONTRACT

13. While the Claimant has performed its obligations under the Contract, the Respondent has fulfilled the Contract only partially and breached it in a number of material aspects. The colourised version of the Movie was produced on time and the Respondent arranged for the sale of screening rights to the Channel One under Licensing Agreement No. 343 of 28 June 2011 ("**Licensing Agreement**"). However, this sale was for the sum in Russian Roubles equivalent to USD 412,000, i.e. for the amount lower than USD 470,000, which was stated as the minimum permissible amount for this deal in Schedule 1. The same is true with respect to DVD release rights which were granted to Novyy Disk (a Russian distribution company) for the amount of USD 8,000, again lower that USD 15,000 minimum threshold established in Schedule 1.

---

[2] See copy along with translation into English attached as **Exhibit 2** to this Request.
[3] See copy along with translation into English attached as **Exhibit 3** to this Request.

14. Moreover, neither of above amounts, obtained by the Respondent as the result of distribution of the colourised Movie was made available for repayment of the Claimant's investment as it should have been done pursuant to the Contract. Nor did the Respondent carry out any further sales of the rights to colourised Movie.

15. Therefore, in breach of the Contract, the Respondent has failed to:

    a.   procure that the conditions of Licensing Agreement No. 343 of 28 June 2011 ("**Licensing Agreement**"), concluded with Channel One for demonstration of the colourised Movie were no worse than that stated in Schedule 1;

    b.   arrange for the sale of screening rights to the colourised Movie to any of the major Ukrainian channels as per Schedule 1;

    c.   sell the DVD release rights regarding the colourised Movie at conditions no worse than that stated in Schedule 1;

    d.   procure, in breach of Clause 3.2 of the Contract, the accumulation of USD 540,000 of profits from the distribution of the colourised Movie within the contractually prescribed period of time;

    e.   ensure the repayment of the Claimant's investment by 10 June 2011 as per Clause 4.4 of the Contract;

    f.   pay the Claimant the amount of USD 412,000 received from Channel One under Licensing Agreement and USD 8,000 obtained form Novyy Disk as a partial settlement of its investment under Clause 4.4 of the Contract.

## VII. RELIEF SOUGHT

16. Lanabond seeks the following relief:

(1) payment by GDP of proceeds for distribution of the colourised Movie in the amount of USD 412,000 paid by Channel One under Licensing Agreement and USD 8,000 obtained from Novyy Disk for the DVD release rights;

(2) payment of 12 per cent per annum for belated repayment of the Claimant's investment in the amount of no less than USD 95,000;

(3) Such further orders, damages, interest for late payment, other relief as may be

6

appropriate or necessary;

(4) Costs due under the Agreement and/or pursuant to section 61 of the Arbitration Act 1996 and Article 28 of the LCIA Rules.

## VIII. PROCEDURAL MATTERS

17. In Clause 8 of the Contract, the parties did not make any provisions regarding the legal seat, language of arbitration or the composition of the Tribunal. Therefore, pursuant to LCIA Rules, which, pursuant to Clause 8.2, are incorporated into the Contract as its integral part:

(a) the seat of arbitration shall be London (Article 16.1);

(b) there shall be a sole arbitrator appointed under the LClA Rules (Article 5.4);

18. Under Article 17.1 of the LCIA Rules where the parties have not chosen a language in advance:

*the initial language of the arbitration shall be the language of the Arbitration Agreement*.

Pursuant to Article 17.3 of the LCIA Rules:

*[u]pon the formation of the Arbitral Tribunal and unless the parties have agreed upon the language or languages of the arbitration, the Arbitration Tribunal shall decide upon the language(s) of the arbitration, after giving the parties an opportunity to make written comment and taking into account the initial language of the arbitration and any other matter it may consider appropriate in all the circumstances of the case*.

19. The Claimant is mindful of the fact that the Contract, including arbitration clause in Clause 8, is written in Russian. This fact notwithstanding the Claimant is of the opinion that in the circumstances of the present dispute, in particular in light of the fact that the Contract is governed by the laws of California, USA and the seat of arbitration is London, the arbitration should be conducted in English. However, in order to comply with the above provisions of the LCIA Rules, the Claimant produces the present Request in English as well as in Russian languages.

## IX. SERVICE

20. Copies of this Request (including all accompanying documents) are being served on GDP by courier to the Respondent's address indicated in the Contract:

    10940 Wilshire Blvd. Ste. 1200,

    Los Angeles, California, 90024.


## X. REGISTRATION FEE

21. The Claimant confirms that it has effected a bank transfer of the Registration fee of USD 2,700 to the LCIA on 22 March 2013[4].


## XI. RESERVATION OF RIGHTS

22. This Request sets out, in summary the claim of Lananond against GDP under the Contract. The Claimant reserves its rights to expand, amend or modify any factual statements or legal arguments made herein.



Dated this 22 day of March 2013



AstapovLawyers International Law Group

Attorneys for the Claimant

---

[4] See document confirming the payment attached as **Exhibit 4** to this Request.

<u>**IN THE MATTER OF ARBITRATION UNDER LCIA ARBITRATION RULES**</u>

**ARBITRATION NO. ...**

<u>**B E T W E E N:**</u>

**LANABOND LIMITED**

<u>Claimant</u>

**-AND-**

**GRANDING DIMENSION PICTURES Inc.**

<u>Respondent</u>

———————————————————————

**REQUEST FOR ARBITRATION**

———————————————————————

Astapov Lawyers International Law Group

Europe Business Centre

4 Muzeyny prov., 3rd floor,

Kyiv, 01001, Ukraine

Phone: +38 (044) 490 70 01

Fax: +38 (044) 490 70 02

**EXHIBIT 1**

**Договор № Н-108/2I**

г. Лос Анджелес                                     « 21» ноября 2010 года

Компания Grading Dimension Pictures Inc., зарегистрированная в штате Калифорния, США, и ведущая бизнес по адресу 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, в лице управляющего партнера   Лопатенок Игоря, именуемая в дальнейшем «Сторона-1» и компания LANABOND LIMITED, зарегистрированная по законодательству  Республики Кипр, работающая по адресу: Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, в лице полномочного  представителя Кирьязиева Алексея,   действующего на основании доверенности, выданной  29 октября 2009 г. , именуемая в дальнейшем «Сторона-2», далее совместно именуемые «Стороны»,

Стороны заключили этот договор о нижеследующем:

### 1.Определения терминов и понятий

1.1. «Договор» - данный Договор со всеми надлежащим образом оформленными приложениями и дополнениями.

1.2. «Колоризация» - творческий процесс создания цветного изображения из черно-белого, а также творческий процесс реставрации с помощью компьютерной обработки изображения и фонограммы оригинального фильма для устранения дефектов, появляющихся со временем.

1.3. «Фильм» - художественный фильм «ЦИРК», режиссера Г.Александрова, 1936 г., 94 минуты, Мосфильм.

1.4. «Территория» - территория, на которой Сторона-1 вправе использовать права на Фильм в пределах и способами, предусмотренными в настоящем Договоре. По умолчанию – территория всех стран мира.

### 2.  Предмет Договора

2.1. Согласно данного Договора, Сторона-1 исполняет работы по реставрации и колоризации Фильма и созданию обновленной (колоризованной) версии Фильма, а Сторона-2 оплачивает такие работы в порядке и в сроках, предусмотренных данным Договором и соответствующими приложениями.

2.2. Сторона-1 владеет, до момента передачи прав Предприятию, которое будет совместно создано Сторонами (п. 2.5., п. 2.6. Договора), правами на использование и реализацию Фильма в любых средствах массовой информации (медиа), включая телевидение, кабельное вещание, спутниковая трансляция, размещения на видео/DVD носителях, в среде Интернет и в других средствах массовой информации.

2.3. Сторона-1 обязуется осуществить на Территории реализацию прав на показ колоризованного Фильма на условиях, определенных данным Договором и соответствующими приложениями.

2.4. Сторона-2 обеспечивает финансирование производства обновлённой (колоризованной) версии Фильма и владеет и получает 50% доходов от реализации всех видов лицензируемых прав на Фильм, после компенсаций затрат Стороны-1 на производство Фильма и после дистрибьюционных затрат. При этом    представители Стороны-2 получают титр Исполнительный Продюсер – («Executive producer») в финальных титрах Фильма.

2.5. Стороны договариваются о создании совместного предприятия (далее «Предприятия») по законодательству Республики Кипр с равными долями участия каждой из сторон (50 %

активов Предприятия принадлежит Стороне-1, 50% активов – Стороне-2). При этом каждая из Сторон имеет право привилегированной покупки доли другой Стороны в Предприятии в случае ее продажи другой Стороной.

2.6. После создания Предприятия с равными долями владения, Сторона-1 заключает с этим Предприятием договор о передаче ему прав интеллектуальной собственности на колоризованный Фильм.

2.7. Стороны гарантируют, что Предприятие, созданное в соответствии с п. 2.5. настоящего Договора, после передачи ему прав интеллектуальной собственности на колоризованный Фильм (п.2.6. Договора) заключит со Стороной-1 эксклюзивный договор о дистрибьюции колоризованного Фильма.

### 3. Права и обязанности сторон

3.1 Сторона-1 обязуется в соответствии с условиями настоящего Договора и приложениями к нему в срок до 05 июня 2011 г., обеспечить качественное выполнение работ по колоризации Фильма.

3.2. Сторона-1 обязуется после создания колоризованной версии Фильма в срок до 05 июня 2011 г. и после передачи ей прав от Предприятия обеспечить реализацию прав на Фильм на общую сумму 540,000 (пятьсот сорок тысяч долларов США) на условиях, согласованных в Приложении 1 к настоящему Договору.

3.3 Сторона-2 обязуется профинансировать производство колоризованного фильма в размере и порядке, который определен настоящим Договором.

3.4. В рамках настоящего Договора Сторона-1 является эксклюзивным технологическим партнером Стороны-2 в области реставрации и колоризации Фильма.

### 4. Стоимость работ по Договору и порядок расчетов

4.1. Стороны согласовали стоимость колоризации Фильма, исходя из хронометража 94 минуты, в размере 500,000 (пятьсот тысяч) долларов США (Приложение №2).

4.2. В случае замены Стороной-1 Фильма на резервные наименования из-за фактического отличия хронометража нового фильма от 94 минут (хронометраж Фильма) цена производства и доход от реализации нового фильма подлежат соответствующему перерасчету, пропорционально хронометражу Фильма, и должен быть согласован Сторонами путем подписания Дополнительного соглашения к настоящему Договору, которое в этом случае будет являться неотъемлемой частью последнего.

4.3. В срок до 10 декабря 2010 г., после подписания Договора и всех приложений к нему, Сторона-2 производит полную оплату своих обязательств путем перечисления денежных средств на счет Стороны-1, указанный в реквизитах настоящего Договора.

Все расчеты производятся путем безналичного перечисления денежных средств на счет Стороны-1, указанный в реквизитах Договора.

4.4. После выполнения работ по колоризации Фильма и получения прав на реализацию от Предприятия Сторона-1 обязуется заключить соответствующие договора на продажу прав на колоризованный Фильм (приложение №1), вся выручка от которой, после вычета дистрибьюторских, агентских и рекламных расходов, распределяется следующим образом:

- В первоочередном порядке Стороне-2 компенсируются вложенные в производство колоризованного Фильма средства в размере 500, 000 (пятьсот тысяч долларов США (п.4.1., 4.2. настоящего Договора);

- Стороны согласовали, что на 30, 000 (тридцать тысяч долларов США) уменьшается прибыль Стороны 1 в результате деятельности Предприятия.

- Все остальные доходы от реализации всех видов лицензируемых прав на Фильм (после компенсации стоимости производства Фильма и других приведённых выше затрат) подлежат переводу Предприятию для раздела между Стороной-1 и Стороной-2 в соотношении 50% на 50%. 5. Гарантии Сторон

5.1.Сторона-2 гарантирует, что она имеет все необходимые полномочия для заключения настоящего Договора;

5.2. Сторона-1 гарантирует, что она имеет все необходимые полномочия для заключения настоящего Договора.

## 6. Ответственность Сторон

6.1. В случае нарушения обязательств, которые возникают из данного Договора, Стороны несет ответственность, определенную этим Договором и/или действующим законодательством, указанном в п.9.6. настоящего Договора.
Нарушением Договора является его неисполнение или ненадлежащее исполнение, то есть исполнение с нарушением условий, определенных содержанием данного Договора.
6.2. В случае нарушения Стороной-1 сроков исполнения работ по колоризации Фильма и/или сроков реализации прав на Фильм (п.3.1., 3.2. настоящего Договора) Сторона-1 выплачивает Стороне-2 штраф в размере 12 % годовых от общей стоимости данного Договора за весь срок просрочки.
6.3. В случае нарушения Стороной-1 обязательств по заключению договора о передаче прав интеллектуальной собственности на колоризованный Фильм (п. 2.6. настоящего Договора) Сторона 1 выплачивает Стороне 2 штраф в размере двойной цены данного Договора.
6.4. В случае нарушения Стороной 2 сроков оплаты работ по колоризации Фильма Сторона 1 имеет право не начинать или приостановить выполнение работ. При этом срок выполнения работ смещается на период задержки до получения полной оплаты в соответствии с п. 4.3. настоящего Договора.
6.5 В случае нарушения Стороной 2 обязательств по п.2.7. или нарушения обязательства по эксклюзивной реализации Фильма через Сторону 1, Сторона 2 выплачивает Стороне 1 штраф в размере двойной цены данного Договора.

## 7. Конфиденциальность

7.1. Все условия настоящего Договора, а также содержание переговоров Сторон в процессе работы над настоящим Договором и в ходе его реализации, являются конфиденциальными и не подлежат разглашению, кроме случаев, прямо предусмотренных законодательством штата Калифорния, США.

## 8. Порядок разрешения споров

8.1.Все возможные споры, вытекающие из настоящего Договора или в связи с ним, Стороны будут стремиться разрешить путем переговоров.
8.2. Если Стороны не пришли к соглашению путем переговоров, то любой спор, возникающий по настоящему Договору или в связи с ним, в том числе любой вопрос в отношении его существования, действительности или прекращения, подлежит передаче на рассмотрение и окончательное разрешение в арбитраж согласно Регламенту Лондонского Международного Третейского суда, такой Регламент в результате ссылки на него считается частью настоящей оговорки.
8.3. Стороны договорились считать правом действующим в рамках настоящего контракта право штата Калифорния, США.

## 9. Прочие условия

9.1.Со дня подписания настоящего Договора обеими Сторонами все предшествующие переговоры и переписка по вопросам, урегулированным настоящим Договором, утрачивают

юридическую силу.

9.2. Все приложения и дополнения к настоящему Договору являются его неотъемлемой частью.

9.3. Все приложения, дополнения и изменения к настоящему Договору действительны лишь при условии, если они совершены в письменной форме и подписаны полномочными представителями и скреплены печатями Сторон.

9.4. Все уведомления и сообщения, направляемые Сторонами друг другу в соответствии с настоящим Договором или в связи с ним, должны быть оформлены в письменной форме и будут считаться направленными надлежащим образом, если они посланы заказным письмом с уведомлением о вручении по адресам Сторон, указанным в настоящем Договоре, по факсу – после получения подтверждения получения факсимильного сообщения, или доставлены курьером и вручены под роспись.

9.5. Стороны обязаны незамедлительно (не позже чем через 5 рабочих дней) в письменной форме уведомлять друг друга обо всех изменениях адресов и других реквизитов, указанных в настоящем Договоре.

9.6. Во всем, что не предусмотрено настоящим Договором, Стороны руководствуются действующим законодательством штата Калифорния, США.

9.7. Настоящий Договор составлен и подписан в двух подлинных экземплярах по одному для каждой из Сторон, причем оба экземпляра имеют одинаковую юридическую силу.

8. Адреса, реквизиты и подписи Сторон:

Сторона-1:

Grading Dimension Pictures Inc.

10940 Wilshire Blvd. Ste.1200, Los Angeles, CA, 90024
Bank name: Wells Fargo Bank, N.A.
Bank Address: 18801 Ventura Blvd, Suite 101 Tarzana, CA 91356
ABA/RTN#: 121000248
Account#: 9421333544
Swift code=WFBIUS6S

Сторона-2:

LANABOND LIMITED

Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus

Bank of beneficiary:

FBME Bank Ltd, Nicosia, Cyprus,

Acc. 062875

S.W.I.F.T. FBMECY2N

CY69 11501001062875USDCACC001

Intermediary bank

Deutsche Bank Trust Company Americas

BKTRUS33

acc: 04-053-863

Сторона-1:

.....................................

Игорь Лопатенок

Сторона-2:

.....................................

Кирьязиев Алексей

## Contract No. H-108/21

*Los Angeles*                                                                                              *21 November 2010*


Grading Dimension Pictures Inc., incorporated in the State of California, USA, with its place of business at 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, represented by its Managing Partner Igor Lopatenok, hereinafter referred to as "Party 1", and LANABOND LIMITED, incorporated under the laws of the Republic of Cyprus, whose registered office is at Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, represented by its authorised representative Oleksii Kiriaziiev, acting on the basis of the power of attorney issued on 29 October 2009, hereinafter referred to as "Party 2", and hereinafter collectively referred to as the "Parties",

have agreed as follows:


### Terms and Definitions

1.1.   "Contract" means this Contract together with all duly executed schedules and addenda hereto.

1.2.  "Colourisation" means a creative process aimed at adding colour to black and white images and a creative process of a computer aided restoration of the images and soundtracks of the original film to remedy defects caused by time.

1.3. "Film" means "Circus" Feature Film (running time: 94 minutes) directed by G. Aleksandrov at Mosfilm (1936).

1.4. "Territory" means the territory where Party 1 is entitled to exercise the rights to the Film to the extent and in a manner as provided hereunder. It automatically includes any territories around the Globe.

### 2. Subject Matter

2.1.  According to this Contract, Party 1 shall perform the works with respect to the Film restoration and colourisation, and creation of a remastered (colourised) version of the Film, and Party 2 shall pay for such works in a manner and within the terms as provided hereunder and in relevant schedules hereto.

2.2.  Party 1 holds, until the transfer of the rights to the JVCo to be jointly formed by the Parties (Article 2.5. and Article 2.6. hereunder), the rights to use and distribute the Film in any mass media including television, cable broadcasting, satellite transmission, on video/DVD media, over the Internet and in any other mass media.

2.3.   Party 1 shall cause the exercise, within the Territory, of the screening rights with respect to the colourised Film on the terms and conditions set out herein and in the relevant schedules hereto.

2.4.  Party 2 shall ensure financing of the remastered (colourised) version of the Film and shall own and receive 50% of the revenues resulting from the exercise of all and any licensed rights to the Film upon compensation of Party 1 for the expences incurred in connection with the Film production and its distribution costs. In addition, Party 2 shall be given the title of Executive Producers (the "Executive Producers") in closing credits of the Film.

2.5.  The Parties hereby agree to form a joint venture company (hereinafter, the "JVCo") under the laws of the Republic of Cyprus, in which the parties shall have equal interests (50 % of the JVCo's assets shall be held by Party 1, and the other 50% of the assets, to Party 2). Furthermore, each of the Parties may

[signature illegible]                                                                        [signature illegible]

have a preemptive right to purchase the other Party's share in the JVCo in the event of its sale by such Party.

2.6. Following the formation of the JVCo with equal shares therein, Party 1 shall enter into an agreement with such JVCo with respect to transfer of intellectual property rights to the colourised Film.

2.7. The Parties warrant that the JVCo to be formed under Article 2.5. hereunder shall, upon the transfer to it of the intellectual property rights to the colourised Film (Article 2.6. hereunder), enter into the agreement with Party 1 on the exclusive distribution of the colourised Film.

### 3. Rights and Obligations of the Parties

3.1 Party 1 shall, by 5 June 2011, ensure completion of the Film colourisation works the quality of which shall meet the requirements of this Contract and schedules hereto.

3.2. Party 1 shall, upon creation of the colourised Film version by 5 June 2011 and after the JVCo transfers the rights to it, ensure that the rights to the Film be exercised at the total price of five hundred and forty thousand US Dollars (USD 540,000) and subject to the terms and conditions as agreed in Schedule 1 hereto.

3.3. Party 2 shall finance production of a colourised film in the amounts and in the manner as defined hereunder.

3.4. Subject to this Contract, Party 1 shall be an exclusive technology partner of Party 2 in connection with the Film restoration and colourisation.

### 4. Price of the Works and Payment Procedure

4.1. The Parties have agreed that the price of the Film colourisation, taking into account its 94 minute running time, shall be five hundred thousand US Dollars (USD 500,000) (Schedule No.2).

4.2. If Party 1 shall replace the Film with any backup titles as a result of actual difference of the new film running time from 94 minute length (the Film running time), the production cost of, and sales proceeds from, the new film shall be subject to relevant recalculation pro rata to the running time of the Film, and approved by the Parties by executing an Addendum hereto, which shall form an integral part of the latter.

4.3. By 10 December 2010, after signature of this Contract and all schedules hereto, all payments due and payable by Party 2 under its obligations hereunder shall be made in full by cash transfers to the account of Party 1, set out in the payment details hereunder.

All payments shall be made by bank transfers to the account of Party 1, set out in the payment details hereunder.

4.4. After completion of the Film colourisation works and obtaining the marketing rights from the JVCo, Party 1 shall into the relevant agreements of sale of the colourised Film (Schedule No.1), all proceeds from which shall, upon deduction of the distribution, agency and advertising fees, be distributed in the manner as follows:

- Party 2 shall have priority in being compensated for its investment in the production of the colourised Film in the amount of five hundred US Dollars (USD 500,000 (Articles 4.1. and 4.2. hereunder);

- the Parties have agreed that the profits of Party 1 shall be reduced by thirty thousand US Dollars (USD 30,000) as a result of the JVCo's operations.

[signature illegible]                                        [signature illegible]

- All other revenues resulting from the exercise of any licensed rights to the Film (upon compensation for the Film production costs and other expences) shall be transferred to the JVCo for the purpose of proportional distribution between Party 1 and Party 2 on a 50%/50% basis.

## 5. Warranties

5.1. Party 2 warrants that it has been duly authorised to execute this Contract;

5.2.  Party 1 warrants that it has been duly authorised to execute this Contract.

## 6. Liability

6.1. In the event of any breach hereunder, the Parties shall be liable to the extent provided by this Contract or applicable law mentioned in Article 9.6. hereunder.
A breach hereunder shall be any failure to perform or improper performance hereunder, i.e. performance in breach of the terms and conditions set out herein.

6.2. In the event of any delayed performance by Party 1 with respect to the Film colourisation and/or delayed exercise of the rights to the Film (Articles 3.1. and 3.2. hereunder), Party 1 shall pay a penalty to Party 2 at the rate of 12 % p.a. of the total price hereof for the whole period of such delay.

6.3. In the event of any breach by Party 1 of its obligations to conclude an agreement on transfer of the intellectual property rights to the colourised Film (Article 2.6. hereunder), Party 1 shall pay a penalty to Party 2 at a double price hereof.

6.4. In the event of any delay by Party 2 in paying for the works related to the Film colourisation, Party 1 shall be entitled not to proceed with, or suspend, any performance hereunder. Subject to the foregoing, the performance period shall be extended for the period of such delay until the payments due and payable under Article 4.3 hereof are received in full.

6.5. In the event of any breach by Party 2 of its obligations under Article 2.7. hereof or any obligations related to the exclusive distribution of the Film by Party 1, Party 2 shall pay a penalty to Party 1 in a double amount of the price hereof.

## 7. Confidentiality

7.1.  All terms and conditions hereunder as well as the contents of the discussions held by the Parties in the course of negotiation and performance hereof shall be confidential and may not be disclosed unless otherwise expressly provided by laws of the State of California, USA.

## 8. Resolution of Disputes

8.1. The Parties shall endeavour to resolve all disputes that may arise from or in connection with this Contract by negotiations.

8.2.  If the Parties fail to resolve a dispute by negotiations, then any such dispute arisen from or in connection with this Contract, including any matters in connection with its existence, validity or termination, shall be referred to, and finally resolved by, arbitration according to the Rules of the London Court of International Arbitration, which rules shall be deemed to be incorporated herein by reference.

8.3.  The Parties have agreed that this contract shall be governed by law of the State of California, USA.

## 9. Miscellaneous

9.1. This Contract shall, with effect from the date hereof, supersede all prior negotiations and correspondence in relation to the matters covered herein.

9.2. All schedules and addenda to this Contract shall form an integral part hereof.

[signature illegible]                                          [signature illegible]

9.3.  All schedules, addenda and amendments to this Contract shall only be valid if executed in writing and signed by the authorised representatives and authenticated by the seals of the Parties.

9.4.  All notices and communications to be given by the Parties to each other under or in connection with this Contract shall be in writing and deemed duly given if sent by registered mail, return receipt requested, to such addresses of the Parties as specified herein or, if sent by facsimile transmission, upon confirmation of the receipt, or delivered by courier against signature.

9.5.  The Parties shall, without delay (within at least 5 business days), notify each other in writing of any changes in their addresses and other details set out herein.

9.6.   The Parties shall rely on applicable laws of the State of California, USA, with respect to any other matters not specifically covered herein.

9.7.  This Contract is drawn up and signed in two authentic counterparts of the same legal effect of which each Party shall receive one.

### 8. Addresses, Details and Signatures of the Parties

Party 1
Grading Dimension Pictures Inc.
10940 Wilshire Blvd. Ste.1200, Los Angeles, CA, 90024
Bank name: Wells Fargo Bank, N.A.

Bank Address: 18801 Ventura Blvd, Suite 101
Tarzana, CA 91356
ABA/RTN#:121000248
Account#: 9421333544
Swift code=WFBIUS6S

Party 2
LANABOND LIMITED
Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus
Bank of beneficiary:
FBME Bank Ltd, Nicosia, Cyprus,
Acc. 062875
S.W.I.F.T. FBMECY2N
CY69 11501001062875USDCACC001
Intermediary bank
Deutsche Bank Trust Company Americas
BKTRUS33
acc: 04-053-864

Party 1 [seal: Corporate Seal 3205207* ]

[signature illegible]
Igor Lopatenok

Party  2  [seal:  LANABOND  LIMITED*Lanabond Lanabond Lanabond Lanabond]
[signature illegible]
Oleksii Kiriaziiev

**EXHIBIT 2**

**Приложение № 1**

### к Договору № H-108/2I от «21» ноября 2010 года

Компания Grading Dimension Pictures Inc., зарегистрированная в штате Калифорния, США, и работающая по адресу 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, в лице управляющего партнера   Лопатенок Игоря, именуемая в дальнейшем «Сторона-1» и компания LANABOND LIMITED, зарегистрированная по законодательству  Республики Кипр, работающая по адресу: Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, в лице полномочного представителя Кирьязиева Алексея,   действующего  на  основании доверенности, выданной  29 октября 2009 г. , именуемая в дальнейшем «Сторона-2», далее совместно именуемые «Стороны»,

заключили настоящее Приложение №1 к Договору № H-108/2I от от  «21»  ноября 2010 года о нижеследующем:

1.    В соответствии с Договором № H-108/2I от  «21»  ноября 2010 года года Сторона-1 обязуется организовать реализацию прав на показ колоризованного Фильма «ЦИРК» на следующих условиях:

В срок до 15 мая  2011 года заключить соответствующие договора, на условиях не хуже чем нижеследующие:

1. Права на телевизионный показ на «Первом канале», территория РФ, срок 2 года с момента заключения договора, количество показов (2+2 повтора), сумма эквивалентная $470,000.
2. Права на телевизионный показ на одном из основных Украинских телеканалах, территория Украины, срок 2 года с момента заключения договора, количество показов (2+2 повтора), сумма эквивалентная $55,000.
3. Права на выпуск фильма на носителях ДВД, территория СНГ, минимальная гарантия – эквивалентная $15,000, роялти – 30% с момента покрытия минимальной гарантии.

2. Стороны согласовали минимальную общую сумму продаж по состоянию на 15 мая  2011 года в размере $540,000 (пятьсот сорок  тысяч долларов США).

3. Сторона-1 обязуется  перечислить на счет Предприятия денежные средства, полученные от третьих лиц на основании договоров о реализации прав на Фильм (п. 1 настоящего Приложения)  не позднее чем в 5-ти -дневный срок с момента их получения.

4. В случае нарушения Стороной-1 сроков перечисления денежных средств, полученных от третьих лиц на основании договоров о реализации прав на Фильм (п. 1 настоящего Приложения) Сторона-1 выплачивает Стороне-2 штраф в размере 1% от просроченной суммы за каждый день задержки платежа.

Сторона-1:

Grading Dimension Pictures Inc.

..................................................

Игорь Лопатенок

Сторона-2:

..................................................

Кирьязиев Алексей

**Приложение № 2**
**к Договору № Н-108/2I от «21» ноября 2010 года**

Компания Grading Dimension Pictures Inc., зарегистрированная в штате Калифорния, США, и работающая по адресу 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, в лице управляющего партнера   Лопатенок Игоря, именуемая в дальнейшем «Сторона-1» и компания LANABOND LIMITED, зарегистрированная по законодательству  Республики Кипр, работающая по адресу: Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, в лице полномочного   представителя   Кирьязиева Алексея,     действующего   на   основании доверенности,выданной  29 октября 2009 г. , именуемая в дальнейшем «Сторона-2», далее совместно именуемые «Стороны»,

заключили настоящее Приложение №2 к Договору № Н-108/2I от от  «21»  ноября 2010 года и согласовали производственный бюджет реставрации и колоризации фильма «ЦИРК»

### ПРОИЗВОДСТВЕННЫЙ БЮДЖЕТ
Реставрации и колоризации фильма «ЦИРК»
Хронометраж – 94 минуты (24 кадра/с 35 мм)

| | |
|---|---|
| 1. Изготовление контратипной копии исходного ч/б фильма, ГФФ РФ, механическая и химическая реставрация, ультрозвуковая очистка, транспортировка в г.Киев | $10,000 |
| 2. Изучение архивов и поиск достоверных цветовых решений | $10,000 |
| 3. Гонорары продюсеров, режиссера колоризации, художников | $35,000 |
| 4. Сканирование контратипной копии на сканере ARRI SCAN, в разрешении 2К с глубиной 16 бит. («Техномедиа», Киев; или по усмотрению Стороны 1) | $30,000 |
| 5. Цифровая покадровая реставрация изображения, включая и не ограничиваясь – грейдинг, стабилизация, де-фликер (уменьшение мерцания), де-нойз (подавление зернистости и шумов), удаление артефактов, возникших за время хранения фильма. | $40,000 |
| 6. Процес колоризации, включая изготовление арт-дизайн кадров, ротоскопию, QC (контроль качества) | $331,000 |
| 7. Грейдинг и цветокоррекция готового материала | $15,000 |
| 8. Цифровая ресставрация монофонического звука, аугументирование (добавление естественности звуку после цифровой ресставрации), ре-мастеринг в формате Dolby Surround 5.1 | $19,000 |
| 9. Мастеринг цифровой копии, мастер-кассет HDCAM-SR, Betacam-Digital | $7,000 |
| 10. Транспортные расходы, носители, кассеты и ДВД-диски | $3,000 |

**ИТОГО**                                                                      **$500,000**

Сторона-1:

Grading Dimension Pictures Inc.


Игорь Лопатенок

Сторона-2:

LANABOND LIMITED


Кирьязьев Алексей

**Schedule 1**

**to Contract No. H-108/21, dated 21 November 2010**

Grading Dimension Pictures Inc., incorporated in the State of California, USA, with its place of business at 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, represented by its Managing Partner Igor Lopatenok, hereinafter referred to as "Party 1", and LANABOND LIMITED, incorporated under the laws of the Republic of Cyprus, whose registered office is at Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, represented by its authorised representative Oleksii Kiriaziiev, acting on the basis of the power of attorney issued on 29 October 2009, hereinafter referred to as "Party 2", hereinafter collectively referred to as the "Parties",

have executed this Schedule 1 to Contract No. H-108/21 of 21 November 2010 as follows:

1.      Subject to Contract No. H-108/21, dated 21 November 2010, Party 1 shall arrange for the exercise of the screening rights with respect to the colourised Film "CIRCUS" on the following terms and conditions:

By 15 May 2011, relevant agreements shall be executed on the terms and conditions not less favourable than those set out below:

1. The TV screening rights for Channel One to be exercised in the territory of the Russian Federation for the period of 2 years of execution of the agreement with the number of screenings being 2+2 reruns, and an amount equivalent to $470,000.
2. The TV screening rights for one of the Ukrainian channels to be exercised in the territory of Ukraine for the period of 2 years of execution of the agreement with the number of screenings being 2+2 reruns, and an amount equivalent to $55,000.
3. The DVD release rights to be exercised with respect to the film within the CIS territory with a minimum guarantee equal to $15,000, and 30% royalty payable on settlement of such minimum guarantee.


2. The Parties agree that the minimum total sales as at 15 May 2011 shall be five hundred and forty thousand US Dollars ($540,000).

3. Party 1 shall transfer to the JVCo's account the moneys received from third parties under the agreements related to the exercise of the Film rights (Section 1 hereof) within 5 days of such receipt.

4. If Party 1 delays the transfer of the moneys received from third parties under the agreements related to the exercise of the Film rights (Section 1 hereof), Party 1 shall pay a penalty to Party 2 at the rate of 1% of the overdue amount for each day of such payment delay.


Party 1:                                              Party 2:

Grading Dimension Pictures Inc.
[Seal: Corporate Seal 3205207 * GRADING     [Seal: LANABOND LIMITED * Lanabond Lanabond
DIMENSION PICTURES, INC. * CALIFORNIA, USA]    Lanabond Lanabond]

[signature illegible]                                  [signature illegible]

Igor Lopatenok                                        Oleksii Kiriaziiev

**Schedule 2 to Contract** No. **H-108/21, dated 21 November 2010**

Grading Dimension Pictures Inc., incorporated in the State of California, USA, with its place of business at 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, represented by its Managing Partner Igor Lopatenok, hereinafter referred to as "Party 1", and LANABOND LIMITED, incorporated under the laws of the Republic of Cyprus, whose registered office is at Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, represented by its authorised representative Oleksii Kiriaziiev, acting on the basis of the power of attorney issued on 29 October 2009, hereinafter referred to as "Party 2", hereinafter collectively referred to as the "Parties",

have executed this Schedule 2 to Contract No. H-108/21 of 21 November 2010 and agreed on a production budget for the restoration and colourisation of the film "CIRCUS"

PRODUCTION BUDGET
for the Restoration and Colourisation of the Film "CIRCUS"
with the running time of 94 minutes (24 frames p.s. 35 mm)

| | |
|---|---|
| 1. Making of a duplicate copy of the original black-and-white film, the Russian State Motion Picture Film Archive (Gosfilmofond), mechanical and chemical restoration, ultrasonic cleaning, transportation to Kyiv | $10,000 |
| 2. Archive research and looking for true colour solutions | $10,000 |
| 3. Fees of producers, colourisation director and artists | $35,000 |
| 4. Scanning of the duplicate copy using a 2K 16 bit ARRI SCAN film scanner. (Technomedia, Kyiv; or at the option of Party 1) | $30,000 |
| 5. Digital frame-by-frame image restoration, including, but not limited to, trading, stabilisation, deflicking (flicker reduction), denoising (grain and noise reduction), and removal of artefacts that emerged during the storage of the film | $40,000 |
| 6. Colourisation process, including making of art design frames, rotoscoping, QC (quality control) | $331,000 |
| 7. Trading and colour correction of the finished material | $15,000 |
| 8. Digital mono-audio restoration, augmentation (enhancement of audio naturalness following digital restoration), Dolby Surround 5.1 remastering | $19,000 |
| 9. Mastering of a digital copy and HDCAM-SR and Betacam-Digital master tapes | $7,000 |
| 10. Transportation expenses, media, tapes and DVDs | $3,000 |

**TOTAL:**                                                                                    **$500,000**

Party 1:                                                    Party 2:

Grading Dimension Pictures Inc.
[Seal: Corporate Seal 3205207 * GRADING     [Seal: LANABOND LIMITED * Lanabond Lanabond
DIMENSION PICTURES, INC. * CALIFORNIA, USA]     Lanabond Lanabond]

[signature illegible]                                     [signature illegible]

Igor Lopatenok                                           Oleksii Kiriaziiev

**EXHIBIT 3**

**Дополнительное соглашение**
**к Договору №Н-108/21**

г. Лос-Анджелес                                                      «___»_____ 2010 года.

Компания Grading Dimension Pictures Inc., зарегистрированная в штате Калифорния, США, и ведущая бизнес по адресу 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, в лице управляющего партнера   Лопатенок Игоря, именуемая в дальнейшем «Сторона-1» и компания LANABOND LIMITED, зарегистрированная по законодательству  Республики Кипр, работающая по адресу: Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, в лице полномочного    представителя   Кирьязиева   Алексея,   действующего   на   основании доверенности, выданной  29 октября 2009 г. , именуемая в дальнейшем «Сторона-2», далее совместно именуемые «Стороны»,

Заключили настоящее Дополнительное соглашение к Договору №Н-108/21 от 21 ноября 2010 года о нижеследующем:

1.  Стороны согласовали изменить формулировку п. 4.4. Договора и изложили указанное положение Договора в следующей редакции:

«4.4. После выполнения работ по колоризации Фильма и получения прав на реализацию от Предприятия Сторона-1 обязуется заключить  соответствующие договора на продажу прав на  колоризованный Фильм (приложение №1), вся выручка от которой, после вычета дистрибьюторских, агентских и рекламных расходов, в размере согласованном Сторонами, распределяется следующим образом:

- В первоочередном порядке в срок не позднее 10 июня 2011 г. Стороне-2 компенсируются вложенные в производство колоризованного Фильма средства в размере 500, 000 (пятьсот тысяч долларов США (п.4.1., 4.2. настоящего Договора);

- Стороны согласовали, что в срок не позднее 10 июня 2011 г. на 30, 000 (тридцать тысяч долларов США) уменьшается прибыль Стороны 1 в результате деятельности Предприятия.

- Все остальные доходы от реализации всех видов лицензируемых прав на Фильм (после компенсации стоимости производства Фильма и других приведённых выше затрат) подлежат переводу Предприятию для раздела между Стороной-1 и Стороной-2 в соотношении 50% на 50%).

2.  Настоящее Дополнительное соглашение является неотъемлемой частью Договора №Н-108/21 от 21 ноября 2010 года. при условии его подписания полномочными представителями и скрепления печатями Сторон.
3.  Настоящее Дополнительное соглашение составлено и подписано в двух подлинных экземплярах по одному для каждой из Сторон, причем оба экземпляра имеют одинаковую юридическую силу.

Адреса, реквизиты и подписи Сторон:

Сторона-1:

Grading Dimension Pictures Inc.

10940 Wilshire Blvd. Ste.1200, Los Angeles, CA, 90024
Bank name: Wells Fargo Bank, N.A.
Bank Address: 18801 Ventura Blvd, Suite 101
Tarzana, CA 91356
ABA/RTN#: 121000248
Account#: 9421333544
Swift code=WFBIUS6S

Сторона-2:

LANABOND LIMITED

Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087,
Nicosia, Cyprus
Bank of beneficiary:
FBME Bank Ltd, Nicosia, Cyprus,
Acc. 062875
S.W.I.F.T. FBMECY2N
CY69 11501001062875USDCACC001
Intermediary bank
Deutsche Bank Trust Company Americas
BKTRUS33
acc: 04-053-863

Сторона-1:

Игорь Лопатенок

Сторона-2:

Кирьязиев Алексей

Addendum
to Contract No. H-108/21

Los Angeles                                                      _____ 2010

Grading Dimension Pictures Inc., incorporated in the State of California, USA, with its place of business at 10940 Wilshire Blvd. Ste. 1200, Los Angeles, California, 90024, represented by its Managing Partner Igor Lopatenok, hereinafter referred to as "Party 1", and LANABOND LIMITED, incorporated under the laws of the Republic of Cyprus, whose registered office is at Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus, represented by its authorised representative Oleksii Kiriaziiev, acting on the basis of the power of attorney issued on 29 October 2009, hereinafter referred to as "Party 2", and hereinafter collectively referred to as the "Parties",

Have executed this Addendum to Contract No.1-1-108/21 of 21 November 2010 as follows:

1. The Parties have agreed that the wording of Article 4.4. of the Contract shall be amended to read as follows:

«4.4. After completion of the Film colourisation works and obtaining the marketing rights from the JVCo, Party 1 shall enter into the relevant agreements of sale of the colourised Film (Schedule No.1), all proceeds from which shall, upon deduction of the distribution, agency and advertising fees in the amounts agreed by the Parties, be distributed in the manner as follows:

- Party 2 shall have priority in being compensated, by 10 June 2011, for its investment in the production of the colourised Film in the amount of five hundred US Dollars (USD 500,000 (Articles 4.1. and 4.2. hereunder);

- the Parties have agreed that by 10 June 2011, the profits of Party 1 shall be reduced by thirty thousand US Dollars (USD 30,000) as a result of the JVCo's business operations.

- All other revenues resulting from the exercise of any licensed rights to the Film (upon compensation for the Film production costs and other expences as mentioned hereinabove) shall be transferred to the JVCo for the purpose of proportional distribution between Party 1 and Party 2 on a 50%/50% basis.

2. This Addendum shall form an integral part of Contract No.H-108/21 of 21 November 2010 provided that it shall be signed by the authorised representatives and authenticated by seals of the Parties.

3. This Addendum is drawn up and signed in two authentic counterparts of the same legal effect of which each Party shall receive one.

[signature illegible]                                          [signature illegible]

Addresses, Details and Signatures of the Parties

Party 1

Grading Dimension Pictures Inc.

10940 Wilshire Blvd. Ste.1200, Los Angeles, CA, 90024

Bank name: Wells Fargo Bank, N.A.

Bank Address: 18801 Ventura Blvd, Suite 101

Tarzana, CA 91356

ABA/RTN#:121000248

Account#: 9421333544

Swift code=WFBIUS6S

Party 2

LANABOND LIMITED

Kennedy, 8, 1st floor, Flat/Office 101, P.C. 1087, Nicosia, Cyprus

Bank of beneficiary:

FBME Bank Ltd, Nicosia, Cyprus,

Acc. 062875

S.W.I.F.T. FBMECY2N

CY69 11501001062875USDCACC001

Intermediary bank

Deutsche Bank Trust Company Americas

BKTRUS33

acc: 04-053-864

Party 1 [seal: Corporate Seal 3205207* ]

[signature illegible]

Igor Lopatenok

Party 2  [seal:  LANABOND  LIMITED*Lanabond Lanabond Lanabond Lanabond]

[signature illegible]

Oleksii Kiriaziiev

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Fernando M. Olguin and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV13- 2279 FMO (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| LANABOND LIMITED, a Cyprus company | ) |
| | ) |
| | ) **CV13-02279** FMO(SHx) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. |
| | ) |
| GRADING DIMENSION PICTURES, INC., a | ) |
| California corporation; and DOES 1 - 10, | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> CARTEE, LC
> Anthony Cartee (SBN 248721)
> 333 City Boulevard West, 17th Floor
> Orange, CA  92868

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

**JULIE PRADO**

Date: _MAR 2 9 2013_ _____

_Signature of Clerk or Deputy Clerk_

SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| LANABOND LIMITED, a Cyprus company | GRADING DIMENSION PICTURES, INC., a California corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>CARTEE, LC<br>Anthony Cartee (SBN 248721)<br>333 City Boulevard West, 17th Floor<br>Orange, CA  92868; (714) 938-3887 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ 515,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Contract based upon diversity jurisdiction 28 U.S.C. 1332.

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

*CV13-02279*

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Cyprus |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: 3/29/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |