**CARTEE, LC**
Anthony B. Cartee (SBN 248721)
333 City Boulevard West, 17th Floor
Orange, CA  92868
Telephone: (714) 938-3887
Facsimile: (714) 938-3255
Email: acartee@ac-legal.com

Attorneys for plaintiff:
LANABOND LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LANABOND LIMITED, a Cyprus corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GRADING DIMENSION PICTURES, INC., a California corporation,<br><br>　　　　　　Defendants. | CASE NO. CV13-2279-FMO(SHx)<br><br>***EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date:　　TBD<br>Time:　　TBD<br>Room:　　22<br>Judge:<br>Hon. Fernando M. Olguin<br><br>Complaint Filed:<br>March 29, 2013 |

## *EX PARTE* APPLICATION FOR

## TEMPORARY RESTRAINING ORDER

　　Lanabond Limited ("Plaintiff") herby applies, pursuant to Federal Rules of Civil Procedure 65(b) and Local Rule 65-1 for a temporary restraining order ("TRO"), restraining and enjoining defendant Grading Dimension Pictures, Inc. ("Defendant"), its agents and employees from selling, distributing, destroying, or in any way disgorging the movies "The Wall of Victory" and "War: the Color of Time," for which Plaintiff claims an interest until repayment pursuant to contract. Plaintiff further request that this Court order the Defendant to show cause why a

preliminary injunction should not issue enjoining the conduct enumerated above in order to preserve the status quo, pending the constitution of an arbitral tribunal and a decision from such tribunal on the merits.

This application is based on the Complaint filed in this action; the accompany memorandum of points and authorities; the declaration of Alexander Sosis and accompanying exhibits thereto; declaration of Anthony Cartee; and such other evidence and argument as may be presented at or before the time of decision.  Plaintiff requests that the temporary restraining order be granted without requiring Plaintiff to post bond or security because Defendant will not suffer any pecuniary or other harm or damage by the issuance of the relief sought, and because Plaintiff does not have the resources to post bond.

**NOTICE TO DEFENDANT**

Plaintiff is unaware of any attorney representing Defendant.  On April 3, 2013, counsel for Plaintiff emailed the principal of Defendant notifying him that this application would be filed and sought.  Attached to this email was the moving papers and exhibits.  Contemporaneous with the filing of these papers, Plaintiff is affecting personal service of the complaint and TRO papers on named Defendant.

Dated: April 3, 2013             **CARTEE, LC**


                                 By:  /s/ Anthony Cartee
                                      Anthony Cartee, Esq.
                                      Attorneys for Plaintiff

# POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 22, 2013, Plaintiff filed a written request for arbitration with the London Court of International Arbitration ("LCIA"). On March 29, 2013, Plaintiff filed a complaint against Defendant in the Central District of California pursuant to 9 U.S.C. § 3 for the purposes of seeking interim measures only. While an arbitral tribunal is being formed, Plaintiff seeks to maintain the status quo by now filing this application for a temporary restraining order and order to show cause.

### A. THE PARTIES CONTRACT AND DEFENDANT'S BREACH

This is essentially a breach of contract action involving the colorization of a black-and-white Soviet movie from 1936 entitled "Tsirk" or "Circus." *See* Declaration of Alexander Sosis ("Sosis Decl."), ¶ 4. The colorization was carried out by Defendant based on an investment made by Plaintiff of $500,000.00. *Id.*

Defendant is a production house specializing in producing movies, restoration of movies, and colorization. *Id.* at ¶ 6. On or about November 21, 2010, the parties entered into a contract providing essentially as follows:

- Lanabond undertook to pay to GDP a price of Movie colourisation in the amount of USD 500,000 on or before 10 December 2010 (cl. 4.1);
- GDP undertook to perform colourisation of the Movie on or before 3 June 2011 (cl. 3.1);
- the parties were to establish in Cyprus a 50/50 joint venture ("**JV**"), which would hold the intellectual property rights in the colourised Movie (cl. 2.5 and 2.6);
- until the establishment of the JV, the intellectual property rights in the Movie would be held by the Respondent (cl. 2.2);
- following the transfer of the rights in the Movie to JV, the latter would enter into an agreement with the Respondent for the exclusive

distribution of the Movie (cl. 2.7);

- GDP undertook to distribute the Movie (cl. 2.3) by way of selling of screening rights for the amount of no less than USD 540,000 on the terms provided for in Schedule 1 (cl. 3.2);
- in case of GDP's failure to perform colourisation or distribution of the Movie within the contractual terms, Respondent was to pay a fine of 12% per annum of the total value of the Contract;
- the profits from the distribution of the Movie, after the recoupment of the distribution costs, were to be shared as follows (cl. 4.4):
    i. the Applicant was to be repaid the sum of its investment (USD 500,000) from the profits of distribution of the Movie prior to any other payments;
    ii. USD 30,000 would be deducted from the Respondent's share of the profits in favour of JV;
    iii. the profits remained after the repayment of the Applicant's investment were to be divided 50/50 by the Parties.

*See* Sosis Decl., ¶ 8, and Ex. "C" thereto.  The agreement called for any disputes to be arbitrated before the London Court of International Arbitration ("LCIA"), but the applicable law would be that of California. *Id.*, Ex. "C."  Additionally, the parties agreed to certain schedules to arrange for distribution and presentation of Circus to certain television stations, namely Russian Channel One and a Ukrainian channel for minimum requisite amounts that were not met. *Id.* at ¶ 9. The parties agreed that Plaintiff should be repaid by July 10, 2011. *Id.* at ¶ 10. This date came and went without re-payment to Plaintiff. *See Id.* at ¶¶ 11 – 19.

Although Plaintiff has fulfilled its obligations under the contract, Defendant has failed to honor its obligations under the contract.  Most importantly, although Defendant has received monies from its distribution

efforts, no sums that have been received have been used to repay Plaintiff's investment. *See Id.* at ¶¶ 19 – 21.

On or about May 21, 2012, the parties signed a memorandum aimed at resolving their growing dispute. *Id.* at ¶ 22 and Ex. "J" thereto. This memorandum provided essentially for:

- the imminent repayment of RUB 9,000,000 (approx. USD $292,600) to LLC Formula Tsveta of the excessively paid taxes would allow GDP to partially repay the Applicant its investment under the Contract (Art. 2);

- pending the repayment of the full amount of investment under the Contract, GDP provided to Lanabond exclusive rights of intellectual property for "The Wall of Victory" and "War: the Color of Time" movies, the rights to which belonged to GDP (Art. 3); and

- full payment to Plaintiff by September 21, 2012

*Id.* at Ex. "J." September 21, 2012, came and went without any payment to Plaintiff. Moreover, no granting of intellectual property rights in the movies listed was made by Plaintiff. As of this writing, Plaintiff has not received anything as promised by Defendant.

B. PLAINTIFF'S BELIEF OF IMMINENT HARM

As far as Plaintiff knows, at all times relevant to this action, Defendant has had two primary shareholders, Igor Lopatonok and Alexandr Shapiro. *See Id.* at ¶¶ 6. In late summer 2011, there seems to have arisen a dispute amongst these shareholders. *Id.* at ¶ 19. After entering the memorandum of 2012, this dispute seems to have further embroiled into a split of Defendant and possible liquidation of its assets. *Id.* at ¶ 25. Plaintiff has further been warned that if any action was taken against Defendant, Defendant would indeed remove all its assets. *Id.* at ¶ 26. Nevertheless, with no indication that Defendant ever planned to honor its contractual obligations, Plaintiff initiated an arbitration pursuant to the contract in the LCIA on March 22, 2013.

One week later, Plaintiff filed this action in an effort to preserve the status quo, to prevent Defendant from liquidating its assets, and specifically from liquidating its ownership interests in the two films that Plaintiff was supposed to share interest pursuant to the contract. Although Plaintiff planned to file a noticed motion for injunction, it has become aware of additional facts that raises Plaintiff's fear of imminent, irreparable harm.

In attempting to serve Defendant after the filing of the complaint, Plaintiff has learned that the business address of Defendant is no longer valid and no additional, alternative address is available. *See* Declaration of Anthony Cartee ("Cartee Decl."), ¶ 2. Plaintiff has also learned that Defendant is a California suspended corporation for its failure to pay taxes. *Id.* at Ex. "1" thereto. Under California law, a suspended corporation is unable to participate in litigation activities, including defending this action. *See Palm Valley Homeowners Ass'n v. Design Mtc.,* 85 Cal.App.4th 553, 561 (Cal.App.4th 2000); *see also* Fed. R. Civ. P. 17(b) (noting that the '[c]apacity to sue or be sued is determined … for a corporation, by the law under which it was organized"). The only possible address that Plaintiff has is the home apartment address of the shareholder who threatened liquidation and is now seemingly moving towards that. Cartee Decl.*,* ¶ 3. Although Plaintiff will notify Defendant of the complaint, and the filing of this application through this address, Plaintiff requests that any response or opposition by Defendant be deemed improper until a certificate of revivor has issued from the California Secretary of State and Defendant is no longer suspended.

## II. THE COURT MAY PROPERLY ISSUE A TRO IN CONNECTION WITH AN ARBITRAL DISPUTE

As an initial matter, a district court may judicially impose interim relief to maintain the status quo pending an arbitration panel's final decision provided that the requirements for granting injunctive relief are otherwise satisfied. *Toyo Tire*

*Holdings of Ams., Inc. v. Continental Tire No. Am., Inc.*, 609 F.3d 975, 981-82 (9th Cir. 2010). Further, pursuant to LCIA Rule 25.3, this Court may grant a provisionary remedy, including a temporary restraining order, in connection with a pending arbitrable controversy. The rule provides that "the Arbitral Tribunal … shall not prejudice howsoever any party's right to apply to any state court or other judicial authority for interim or conservatory measures before the formation of the Arbitral Tribunal and, in exceptional cases, thereafter." In the present case, no arbitral tribunal has yet been formed, and Plaintiff seeks only to preserve the status quo pending adjudication of its rights.

### III.   PLAINTIFF IS ENTITLED TO A TRO

An application for a temporary restraining order must satisfy the same legal standard governing the issuance of preliminary injunction. *Lavan v. City of Los Angeles*, 2011 WL 1533070, at *1 (C.D. Cal. Apr. 22, 2011). Therefore, a successful application will show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury to the plaintiff if relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) an advancement of the public interest. *Id.* (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 19 (2008)).

#### A.   Likelihood of Success on the Merits

Plaintiff's action for breach of contract against Defendant likely will succeed on the merits. To prevail on a breach of contract claim, Plaintiff needs to prove: (1) the existence of a valid contract; (2) that the contract was breached by defendant; (3) that plaintiff performed its obligations under the contract; and (4) that plaintiff suffered damages as a result of the breach. *ProMex, LLC v. Hernandez*, 781 F. Supp. 2d 1013, 1017 (C.D. Cal. 2011).

As stated in detail in the Sosis Declaration, on or around November 21, 2010, Plaintiff and Defendant entered into a contract whereby among other things, Defendant agreed to: (1) arrange a contract for sale of demonstration rights with Channel One by May 15, 2011 ("Channel One Licensing

1  Agreement") for $470,000; (2) arrange a contract for sale of demonstration rights
2  with any major Ukranian channel; (3) arrange a contract for sale of DVD release
3  rights; (4) ensure that the rights of Circus would sell at an amount no less than
4  $540,000; (5) ensure repayment of Plaintiff's $500,000 investment for the
5  colourisation; and (6) tender $412,000 as a result of the Channel One Licensing
6  Agreement and $8,000 as a result of partial settlement obtained from Novyy Disk
7  pursuant to the Contract's. Sosis Decl., ¶¶ 7 – 19.  Defendant failed to perform all
8  of these terms while Plaintiff performed all of its contractual obligations. As a
9  direct and proximate cause of Defendant's breaches, Plaintiff has suffered
10 damages in excess of $507,000.00.  The very fact that Defendant has not honored
11 any of the payment obligations to Plaintiff makes it highly likely Plaintiff will
12 succeed. *See* Sosis Decl., ¶¶ 19 – 25.

         B.     <u>Plaintiff Faces a Likelihood of Irreparable Injury and the Balance of Hardships Favor Granting Plaintiff Relief</u>

15      There is a great likelihood that Plaintiff will suffer irreparable harm if this
16 *ex parte* application is not granted. To determine whether a temporary restraining
17 order should issue, a court must balance the equities of the parties and determine
18 whether the plaintiff would suffer great or irreparable injury if the matter is heard
19 on regular notice. *See Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622,
20 630 (1989).  If denial of injunctive relief would cause the plaintiff great harm and
21 the defendants would suffer little harm, it is an abuse of discretion to deny
22 plaintiff's request for such relief. *See Robbins v. Superior Court of Sacramento*
23 *Cnty.*, 38 Cal. 3d 199, 205 (1985).

24      Here, Plaintiff seeks only to enjoin Defendant from selling, releasing,
25 destroying, or otherwise liquidating the two films expressly promised to Plaintiff
26 pursuant to the memorandum of 2012.  It does not seek to freeze Defendant's
27 other assets in any way.  A district court is within its bounds of discretion to issue
28 an asset freeze if it is narrowly tailored. *Johnson v. Couturier*, 572 F.3d 1067,

1085 (9th Cir. 2009); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (finding no hardship where an asset freeze does not extend to living expenses and legal fees). Good cause exists for the Court to issue an order to preserve the status quo while Plaintiff's request for arbitration is pending because Plaintiff will suffer great and irreparable injury if Defendant has specifically liquidated its ownership interests in films for which Plaintiff has rights, namely "The Wall of Victory" and "War: the Color of Time."

Once Plaintiff liquidates and/or sells any of these films, the injury will be irreparable as Plaintiff will likely not be able to recover any judgment from Defendant. Likewise, Defendant would likely not suffer any harm because Plaintiff's request to enjoin Defendant is narrowly tailored. Plaintiff only seeks a restraining order to prevent Defendant from liquidating two of its assets. Such an order would not prevent Defendant from continuing to carry on its business (upon lifting of suspended status), but absent such an order, Plaintiff may suffer irreparable harm.

For the same reasons, the balancing of hardships favor Plaintiff. If a temporary restraining order is not issued, Plaintiff faces the possibility of losing its rights in the films and possibly losing any avenue by which relief can be obtained. If the LCIA determines that Defendant breached the contract and before this determination, Defendant liquidates, Plaintiff will not only have no means to recover what it is owed for the breach of contract. On the other hand, Defendant only faces the possibility of not being able to liquidate and sell two films for which it agreed that Plaintiff had rights until repayment to Plaintiff. Balancing the hardships that both parties may face if a temporary restraining order were issued, the scales sharply tip in Plaintiff's favor.

C. <u>Advancement of the Public Interest Favors Plaintiff</u>

The public interest would be advanced both by affirming that corporate liquidation as a means to avoid legal consequences is wrong and by enforcing

international intellectual property rights. The United States is a member state in the World Intellectual Property Organization and the Berne Convention, and as such, courts must protect the intellectual property rights of holders in other member states as fervently they would to protect the same rights of American citizens.

Lastly, Plaintiff requests that the temporary restraining order be granted without requiring Plaintiff to post security because as explained above, Defendant will likely not suffer any harm by the issuance of the relief sought. In the alternative, if the court must order Plaintiff to post bond, Plaintiff requests that it be a nominal bond in the amount of $1,000. The Ninth Circuit has construed any bond requirement as investing the district court with discretion as to the amount required, if any at all. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). In particular, the district court may dispense with the giving of security "when it concludes there is no likelihood of harm to the defendant from enjoining his or her conduct." *Johnson*, 572 F.3d at 1086. *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that a temporary restraining order issue against Defendant and that this Court set a Hearing to Show Cause Why a Preliminary Injunction Should Not Issue pending adjudication of this dispute through arbitration.

Dated: April 3, 2013                                **CARTEE, LC**

                                                    By: /s/ Anthony Cartee
                                                        Anthony Cartee, Esq.
                                                        Attorneys for Plaintiff